IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ALLYSON ELLIS and CURTIS ELLIS,

    *Plaintiffs*,

v.

POPULAR BANK f/k/a BANCO POPULAR,

and

UNITED STATES SMALL BUSINESS ADMINISTRATION

    *Defendants*.

Case No. 2:24-cv-02042-EFM-ADM

**MEMORANDUM AND ORDER**

Before the Court are two Motions to Dismiss. First, Defendant United States Small Business Administration (the "SBA") seeks dismissal of Count I of Plaintiffs' Complaint as well as the payment of $228,000, held by the Court, to itself (Doc. 24). Similarly, Defendant Popular Bank (the "Bank") seeks dismissal of Plaintiffs' Counts I–V, which are claims against it for slander of title, fraud, violation of K.S.A. § 58-2309a, and punitive damages.[1] For the reasons stated below, the Court denies the SBA's Motion and grants in part and denies in part the Bank's Motion.

---

[1] The Court will discuss below that despite the styling of Plaintiffs' Compliant, punitive damages do not constitute their own separate claim.

I. **Factual and Procedural Background**[2]

In 2008, Plaintiffs owned and operated a business called Ellis Medical Supply, Inc. ("Ellis Medical"). On February 28, 2008, Ellis Medical borrowed $1,588,000.00 from the Bank. Ellis Medical issued the Bank a promissory note (the "Note") for the loan along with a mortgage (the "Mortgage") on their house, which secured the Note in the amount of $228,000. The Note was issued on an SBA form. Concerning the SBA, the Mortgage states:

> If the United States is seeking to enforce this document, then under SBA regulations:
>
> a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.
>
> b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claims of SBA with respect to this Loan.

In 2011, Plaintiffs declared bankruptcy. In either 2011 or 2012, Ellis Medical defaulted on the Note. Shortly thereafter, Ellis Medical wound up, becoming administratively dissolved in 2012. During the wind-up process, the Bank accelerated the Note and Mortgage, repossessing and selling Ellis Medical's assets to cover the value of the Note. However, Plaintiffs allege the Bank never applied the proceeds from those sales towards the Note.

Sometime in 2022, Plaintiffs began the process of selling their house. On August 2, 2022, the Bank informed Security First Title, Plaintiffs' title company, that it held a valid mortgage on Plaintiffs' house. On October 23, 2022, Plaintiffs entered into a contract to sell their house for

---

[2] The facts in this section are taken from Plaintiff's Complaint and attached documents and are considered true for the purposes of this Order.

$940,000. On October 27, 2022, the Bank once again informed Security First Title that it held an enforceable mortgage on the property. Plaintiffs allege that the Bank knew at this time that it could not enforce the Mortgage because it did not hold the Note and the statute of limitations had passed. Although Plaintiffs do not state it directly nor specify why, it appears that the sale fell through. Further, they allege that the Bank knew that informing Security First Title of the Mortgage would cause the sale contract to fail. Based on the Bank's representations, Plaintiffs chose not to enforce the buyer's performance under the sales contract.

On July 21, 2023, Plaintiffs contacted the Bank and demanded that the Bank release the Mortgage because they claimed it was barred by the statute of limitations. At that time, Plaintiffs stated the Mortgage had prevented one sale of the house already, presumably referencing the contract entered into on October 23, 2022. The Bank responded by claiming it had assigned the Note to the SBA in December 2013.[3] It also said that it had reached out to the SBA for direction for how to respond to Plaintiffs' demand and refused to release the Mortgage.

On November 8, 2023, Plaintiffs demanded that the Bank produce the original copy of the Note. The Bank has not yet produced the original copy. As alleged by Plaintiffs, neither the Bank nor the SBA currently holds the original Note, and the SBA has never held the Note.

On December 12, 2023, Plaintiffs once again entered into a contract to sell the house, this time for $885,000. Despite the Bank's refusal to release the Mortgage, Plaintiffs sold their home on or about February 23, 2024, for $885,000.

On January 19, 2024, Plaintiffs filed suit in Kansas state district court against Defendants, seeking release of the Mortgage as well as damages from the Bank based on claims for slander of

---

[3] In a separate email, the Bank claimed the Note was assigned to the SBA in 2012.

title, fraud, and K.S.A. 58-2309a.  As alleged by Plaintiffs, the Bank only transferred the Mortgage to the SBA after Plaintiffs initiated this suit.

On February 2, 2024, the SBA removed the lawsuit to federal court under 28 U.S.C. § 1444.  Shortly after, Plaintiffs moved for a preliminary injunction.  Before the Court could rule on the Motion, the parties agreed that Plaintiffs would pay $228,000 into the Court, after which the SBA would release the Mortgage.  The Court adopted the parties' agreement, ordered it to happen, and declared Plaintiffs' motion for an injunction to be moot.  Plaintiffs deposited the $228,000 with the Court on February 23, 2024.  However, the SBA did not release the Mortgage until April 17, 2024.

On March 27, 2024, both Defendants filed their respective Motions.  These matters are now fully briefed and ripe for ruling.

## II.     Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[4]  Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[5]  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[6]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[7]  Under Rule 12(b)(6), the court must

---

[4] Fed. R. Civ. P. 12(b)(6).

[5] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[7] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[8] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[9] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"[10]

### III. Analysis

At the core of the parties' dispute is whether Defendants have a valid Mortgage and Note against Plaintiffs' property. A substantial portion of the parties' dispute involves competing factual allegations. For example, Defendants claim that Bank transferred the Mortgage to the SBA in 2012 or 2013, a factual allegation absent from the Complaint. Instead, Plaintiffs allege that the Bank destroyed or transferred the Note at some unspecified time and that the SBA has never possessed the original Note. At this stage in the case, the Court will look solely to Plaintiffs' allegations. Therefore, the Court will only address Defendants' legal arguments—not their factual ones.

**A.  Count I**

In Count I, Plaintiffs seek the release of the $228,00 they paid into this Court by claiming the Mortgage now held by the SBA is not enforceable. Although Count I names the Bank as a Defendant, the parties agree that the Bank has no interest in the funds now held by the Court, and thus this Count exists solely between Plaintiffs and the SBA. For its part, the SBA moves to

---

[8] *Iqbal*, 556 U.S. at 678–79.

[9] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[10] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

dismiss Count I and simultaneously requests that the Court essentially enter judgment in the SBA's favor by paying the $228,000 to it.

This case presents a unique scenario on multiple levels. First, most cases dealing with enforceability of mortgages and notes occur in either foreclosure proceedings or bankruptcy court. This is neither. Second, despite the Court's review of Kansas caselaw, it cannot find an analogous case where plaintiffs allege that the mortgage and note have split, with the note's whereabouts unknown.[11]

Generally, "a holder of a promissory note has standing to enforce the terms of the indebtedness, including the right to foreclose on a mortgage that secures it."[12] Both Kansas caselaw and statutes strive to keep the mortgage and note together "based on the intent of the parties."[13] Nevertheless, it is possible to split the note from the mortgage by transferring the note alone. However, this rarely occurs and is an exception to the rule.[14]

If that happens, "a person or entity possessing only the mortgage would never experience the cognizable injury, i.e., the default necessary to foreclose the mortgage."[15] Similarly, "[t]he practical effect of splitting the deed of trust from the promissory note is to make it impossible for

---

[11] As mentioned above, the Court will not address either Defendants' factual arguments that veer outside the pleadings. Except, that is, to note that the SBA argues in a footnote that judicial estoppel applies to whether the SBA has the Note. In that footnote, the SBA alleges that Plaintiffs acknowledge SBA as an assignee for the Bank. Not only is this allegation unsupported by any attachments or documentation, but "[a]rguments raised in a perfunctory manner, such as in a footnote, are waived." *Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1204 (10th Cir. 2023) *petition for cert. filed* (further citation and quotations omitted).

[12] *FV-I, Inc. for Morgan Stanley Mortg. Cap. Holdings, LLC v. Kallevig*, 306 Kan. 204, 392 P.3d 1248, 1256 (2017) (further citation and quotations omitted).

[13] *Id.* at 1265 (citing K.S.A. § 58–2323 and *MetLife Home Loans v. Hansen*, 48 Kan. App. 2d 213, 286 P.3d 1150, 1157 (2012)).

[14] *Id.*

[15] *Id.*

the holder of the note to foreclose, unless the holder of the deed of trust is the agent of the holder of the note."[16]

Thus, "possession of the mortgage alone without demonstrating enforcement rights in the note is insufficient to establish standing in a mortgage foreclosure proceeding."[17] But, and importantly for this case, the mortgage itself continues to exists, "[r]egardless of whether a split occurred."[18] However, that mortgage would be unenforceable by the noteholder, unless the holder of the mortgage acted as an agent for the noteholder.[19]

For the purposes of this Order, the Court accepts Plaintiffs' allegations that the Bank held only the Mortgage and not the Note. Thus, Bank was incapable of suffering any injury necessary to entitle it to foreclose the Mortgage. This, however, did not mean the Mortgage automatically became unenforceable. It only was unenforceable by the Bank. Similarly, despite the Bank's transfer of the Mortgage to the SBA on December 29, 2023, the Bank could not have transferred the Note along with the Mortgage if it did not possess the Note. Accepting Plaintiffs' allegations as true, all the SBA received was a Mortgage it could not enforce.

Plaintiffs also argue that the statute of limitations prevents the Bank from enforcing the Mortgage. This is beside the point if the Bank did not possess the Note. And because the issue of whether the SBA possessed the Note precedes any possible discussion regarding statutes of limitations as to the Note's enforcement, the Court will not address that issue at this time. For

---

[16] *Landmark Nat. Bank v. Kesler*, 289 Kan. 528, 216 P.3d 158, 166 (2009) (further citation and quotations omitted).

[17] *FV-I*, 392 P.3d at 1265.

[18] *Id.* at 1267.

[19] *See Landmark*, 216 P.3d at 166 ("Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default.")

now, the Court denies the SBA's Motion. Because the parties agree that the Bank has no interest in the $228,000, the Court also grants the Bank's Motion as to Count I.

**B.      Count II**

The Bank also seeks dismissal of Count II, Plaintiffs' claim for slander of title. To avoid dismissal on a slander of title claim, plaintiffs must plead facts showing a false and malicious statement disparaging their title to real or personal property which causes injury.[20] In the slander of title context, "[m]alice is defined as a state of mind characterized by an intent to do a harmful act without a reasonable justification or excuse."[21] The existence of malice is generally a factual issue best left to a jury.[22]

Plaintiffs claim that the Bank injured them when it caused the original sales contract to fail by falsely stating that it had an enforceable Mortgage on their house. Although not explicitly stated in the Complaint, a reasonable inference is that the original sales contract in October 2022 fell through because of the Bank's statements to Security First Title that it held the Mortgage. Because the original contract purported to sell the house for $940,000 and Plaintiffs ultimately sold it for $885,000, they appear to have suffered an injury in the amount of $55,000.

The Bank primarily asserts truth as its defense, arguing that it could not release the Mortgage without the SBA's permission. However, the Bank's arguments largely rely on facts outside of the Complaint. As discussed above, there are no allegations in Plaintiffs' Complaint showing that the Bank transferred the Note to the SBA—only that the Bank claimed the transfer

---

[20] *See Sahgal v. DMA Elec., Inc.*, 270 P.3d 1230 (table), 2012 WL 718945, at *2 (Kan. Ct. App. Mar. 2, 2012) (citing *LaBarge v. City of Concordia*, 23 Kan. App. 2d 8, 927 P.2d 487, 492 (1996), *rev. denied* 261 Kan. 1085 (1997)).

[21] *Saddlewood Downs, L.L.C. v. Holland Corp.*, 33 Kan. App. 2d 185, 99 P.3d 640, 648 (2004) (further citation and quotations omitted).

[22] *Id.* (further citation and quotations omitted); *Smith v. Williams*, 2022 WL 4245479, at *7 (D. Kan. Sept. 15, 2022) (citing *Turner v. Halliburton Co.*, 240 Kan. 1, 722 P.2d 1106, 1113 (1986)).

happened. Drawing all inferences in the light most favorable to Plaintiffs, the Bank's statement to Security First Title that it held an enforceable Mortgage could be considered a false statement.

The Bank nevertheless argues that Plaintiffs have not adequately pleaded malice, claiming its statements were made in good faith and with justification because it honestly believed that SBA held the Note. This, however, is also a factual argument that rests outside the pleadings. Thus, it is inappropriate for the Court to address at this stage in the case.

Here, Plaintiffs allege that the Bank knowingly transferred or destroyed the Note while maintaining the Mortgage and holding out to others that it was entitled to enforce the same. Furthermore, Plaintiffs allege that the Bank knew that refusing to release the unenforceable Mortgage would prevent Plaintiffs from being able to sell their house. And Plaintiffs allege that the Bank had no reason or justification for telling others it had a Mortgage it knew to be unenforceable. Together, these allegations suffice for the purposes of this Order to show that the Bank acted with malice when falsely informing other parties that it held an enforceable Mortgage on Plaintiffs' house. Therefore, the Bank's Motion is denied as to Plaintiffs' slander of title claim.

**C.     Count III**

In Count III, Plaintiffs allege fraud by the Bank. Under Kansas law, a fraud claim requires:

> (1) [F]alse statements [that] were made as a statement of existing and material fact; (2) the representations were known to be false by the party making them or were recklessly made without knowledge concerning them; (3) the representations were intentionally made for the purpose of inducing another party to act upon them; (4) the other party reasonably relied and acted upon the representations made; and (5) the other party sustained damage by relying upon them.[23]

Because fraud claims fall under the pleading requirements of Fed. R. Civ. P. 9(b), plaintiffs "must state with particularity the circumstances constituting fraud or mistake." Specifically, plaintiffs

---

[23] *Cmty. First Nat'l Bank v. Nichols*, 56 Kan. App. 2d 1057, 443 P.3d 322, 333 (2019) (quoting *Kelly v. VinZant*, 287 Kan. 509, 197 P.3d 803, 808 (2008)).

must allege "the circumstances of the fraud, i.e., the time, place, and content of the false representation; the identity of the person making the representation; and the harm caused by the complainant's reliance on the false representation."[24]

Here Plaintiffs' allegations fail to meet the specificity standard required by Rule 9(b). First, there are no allegations before this Court that the Bank made any statements to Plaintiffs or others for the purposes of inducing Plaintiffs to rely upon them. Indeed, it is not clear what the Bank would have wanted to induce Plaintiffs to do, as it has never initiated foreclosure proceedings and did not claim to be the holder of the Note.

This reasoning draws further support from the actual damages Plaintiffs claim resulted from their reasonable reliance: (1) the difference in sales price between the old and new contracts for selling the house; (2) attorney's fees related to this action; and (3) not currently possessing the $228,000 that is now with the Court. Plaintiffs fail to plead with specificity any facts showing that these damages were caused by their reasonable reliance on the Bank's representations.

First, there are no allegations that the Bank intentionally made the statement to Security First Title in the fall of 2022 with the purpose of disrupting the original sales contract. Nor does Plaintiffs' Complaint specify why the original sales contract fell through or how the Bank's representations factored into that occurrence. Plaintiffs allege that it happened, the Bank is to blame, and Plaintiffs "relied" on the Bank's representations by not seeking to enforce the sale contract. This may suffice under Rule 8(a)(2) but is insufficient for Rule 9(b).

Second, it seems preposterous that the Bank made any statements for the purpose of causing Plaintiffs to hire counsel to contest the truth of those statements. It is just as preposterous

---

[24] *Paradigm All., Inc. v. Celeritas Tech., LLC*, 659 F. Supp. 2d 1167, 1183 (D. Kan. 2009) (further citation and quotations omitted).

to conclude that Plaintiffs "relied" on the Bank's representations when they hired counsel to facilitate selling their house and help them contest the viability of the Mortgage.

Even more than the others, Plaintiffs' third claim to damages is a nonstarter. If Plaintiffs win this lawsuit and show that they are entitled to the $228,000, then the Court will dispense it to them, and they will have suffered no damages thereby. If they lose, then they were never entitled to the $228,000 and could not have suffered damages thereby. Regardless, at the time Plaintiffs paid the $228,000 into the Court, they already believed and argued the Mortgage was invalid, and initiated this lawsuit to enforce their view. Thus, it is nonsensical for them to allege they paid the $228,000 into the Court *in reliance* on the Bank's representations regarding the validity of the Mortgage.

It seems clear that Plaintiffs' "fraud" claim is really their attempt to fit a square claim into a round set of facts. Because Plaintiffs fail to allege all the elements of fraud under Rule 9(b)'s specificity requirement, the Court dismisses Count III without prejudice.

**D.     Count IV**

The Bank next seeks dismissal of Count IV, which alleges a violation of K.S.A. § 58-2309a. K.S.A. § 58-2309a(a) states in pertinent part "[w]hen the indebtedness secured by a recorded mortgage is paid and there is no agreement for the making of future advances to be secured by the mortgage, the mortgagee or the mortgagee's assignee shall enter satisfaction or cause satisfaction of such mortgage to be entered of record forthwith."

In arguing that K.S.A. § 58-2309a applies to the present case, Plaintiffs misrepresent the holding of *Cadle Co. II v. Lewis*.[25] Plaintiffs claim that in *Cadle*, the Kansas Supreme Court held that the running of a statute of limitations requires release of a mortgage under K.S.A. § 58-

---

[25] 254 Kan. 158, 864 P.2d 718 (1993).

2309a(a).  Not only did the Kansas Supreme Court in *Cadle* not address that issue,[26] the Kansas Court of Appeals in that same case reached the opposite conclusion.  In fact, the Kansas Court of Appeals in *Cadle* explicitly held, "the district court did not err in holding that the expiration of the statute of limitations *did not* pay the note and mortgage so as to subject Cadle to penalty provisions under K.S.A. 58-2309a."[27]  Rather, "K.S.A. 58-2309a, with its penalty provisions for noncompliance, only deals with instances in which there is a final indication that the debt has been paid."[28]

No other Kansas case has ever addressed this issue.  Without any caselaw to support Plaintiffs' position, the Court will apply *Cadle* to hold that the expiration of the statute of limitations does not mean the debt has been "paid" under K.S.A. § 58-2309a.  There are no allegations in Plaintiffs' Compliant that the debt has in fact been paid—only that Plaintiffs are unsure as to how much remains due.  Because Plaintiffs' allegations and arguments fail to create even a wisp of suspicion that they might have a valid claim under K.S.A. § 58-2309a, the Court grants the Bank's Motion as to Count IV.

**E.    Count V**

Finally, the Bank seeks to dismiss Count V, which purports to state a "cause of action" for punitive damages.  But Kansas law is clear that "punitive damages do not by themselves create a cause of action."[29]  In their Response, Plaintiffs assert that "Count V does not represent a separate

---

[26] *Id.* at 720 ("As previously stated, we granted Cadle's petition for review on *the single issue* of whether the state five-year statute of limitations or the federal six-year statute applied to this action.") (emphasis added).

[27] *Cadle Co. II, Inc. v. Lewis*, 1993 WL 13965786, at *3 (Kan. Ct. App. Mar. 26, 1993) *rev'd in part on other grounds* (emphasis added).

[28] *Id.*

[29] *Alain Ellis Living Tr. v. Harvey AD. Ellis Living Tr.*, 308 Kan. 1040, 427 P.3d 9, 17 (2018) (citing *Smith v. Printup*, 254 Kan. 315, 866 P.2d 985, 992–93 (1993)).

cause of action independent of Count IV, but explicitly claimed punitive damages as an element of damages due to fraud." Putting aside the fact that *Count III* is Plaintiffs' fraud claim, it is clear that Count V cannot exist as its own claim. Because the Court grants the Bank's Motion as to Plaintiffs' claim for fraud and that Count V cannot state a cause of action as a matter of law, the Court grants Defendant's Motion as to Count V.

**IT IS THEREFORE ORDERED** that the SBA's Motion to Dismiss (Doc. 24) is **DENIED**.

**IT IS FURTHER ORDERED** that the Bank's Motion to Dismiss (Doc. 25) is **DENIED** as to Counts I and II and **GRANTED** as to Counts III, IV, and V. Count III is dismissed without prejudice and Counts IV and V are dismissed with prejudice.

**IT IS SO ORDERED.**

Dated this 28th day of June, 2024.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE